UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BARRY SEVIN, ET AL.                    CIVIL ACTION

VERSUS                                 NO: 08-802

PARISH OF JEFFERSON, ET AL.            SECTION: R

### ORDER AND REASONS

Before the Court are defendants' motions to dismiss for lack of jurisdiction over the subject matter, motions to dismiss for failure to state a claim upon which relief can be granted, and, in the alternative, motions for summary judgment.  (R. Docs. 16, 20.)  For the following reasons, the Court GRANTS the motions in part and DENIES them in part.


I.    BACKGROUND

In June of 2007, Jefferson Parish enacted Chapter 36, Article XI of the Jefferson Parish Code of Ordinances, known as the Automated Traffic Signal Enforcement ("ATSE") ordinance.  The ATSE authorizes the installation of camera systems at traffic

intersections and the assessment of fines to individuals whose vehicles are photographed driving through a steady red signal. (*See* R. Doc. 1 at ¶¶ 4, 6.)  Plaintiffs Barry Sevin and Edwin Bernard were allegedly photographed by an ATSE-authorized camera system and were issued a notice of violation for running a red light in Jefferson Parish.  On January 31, 2008, they filed an action against Jefferson Parish, the Jefferson Parish Council, and the private operator of the cameras, Redflex Traffic Systems, alleging deprivations of their civil rights in violation of 42 U.S.C. § 1983.  (*Id.*)

According to the complaint, the defendants began enforcing the ATSE in October of 2007. (*Id.* at ¶ 7.)  Redflex installed the red light traffic cameras in parts of Jefferson Parish and is also responsible for administering "civil" tickets on behalf of the Parish. (*Id.* at ¶ 5.)  After a vehicle is photographed violating a red light traffic signal, defendants send a Photo Red Light Enforcement Program Notice of Violation ("Notice of Violation") to the owner of the photographed vehicle. (*Id.* at ¶ 7.)  After receiving a notice of violation, an owner has thirty days either to pay the fine or to contest the fine.  If the vehicle owner does neither, she or he will be assessed an additional $25.00 late payment penalty.  If the owner still does not respond, the violations will be sent to the Jefferson Parish District Attorney's Office for review.  (*Id.* at ¶ 6.)

2

Plaintiffs seek to represent a class of automobile owners who received notices of violation pursuant to the ATSE ordinance. The complaint has been amended three times since it was originally filed (*see* R. Docs. 3, 24, 35), but the present motions to dismiss were filed before the second and third amendments and do not address the later-added parties and claims. The Court will therefore focus on the parties and claims in the original and first amended complaints.[1]  The plaintiffs have pleaded a broad-ranging case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging violations of their civil rights under color of state law.  They seek federal relief under section 1983 for alleged violations of the Fifth, Sixth, and Fourteenth Amendments to the federal constitution and for alleged violations of the Louisiana state constitution and statutes.  (*See* R. Doc. 1 at ¶ 13-15; R. Doc. 3 at ¶¶ 4-10.)

On March 31, 2008, defendants filed two motions to dismiss the claims brought by plaintiffs Barry Sevin and Edwin Bernard, who were the only plaintiffs in the putative class action at the time the motion was filed.[2]  Defendants contend that Mr. Sevin is

---

[1] Many new parties have been added since the motions to dismiss were filed, but the claims have remained substantially the same.

[2] One of the motions to dismiss was filed by Jefferson Parish and the Jefferson Parish Council and the other was filed by Redflex.  Because the two motions are nearly identical, the Court will not distinguish between them.

collaterally estopped from bringing suit and that Mr. Bernard lacks standing to sue the defendants.  The defendants have also urged the court to abstain from hearing the case on federalism grounds and to decline to exercise supplemental jurisdiction over the plaintiffs' state law claims.  The Court addresses these arguments as follows.

## II.  LEGAL STANDARDS

### A.    12(b)(1) Motion to Dismiss

Defendants seek dismissal of the instant action pursuant to Rule 12(b)(1), or alternatively Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) requires dismissal if the court lacks jurisdiction over the subject matter of the plaintiff's claim.  Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint.  *Lopez v. City of Dallas*, *Tex*, 2006 WL 1450520, *2 (N.D. Tex. 2006).  In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.  *Id.; see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  Furthermore, the plaintiff bears the burden of demonstrating that subject

4

matter jurisdiction exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).  Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits.  *See Garcia*, 104 F.3d at 1261.  A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum.  *See Hitt*, 561 F.2d at 608.

## B.   12(b)(6) Motion to Dismiss

In considering a 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)

5

(recognizing a change in the standard of review).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965 (quotation marks, citations, and footnote omitted).


**III. DISCUSSION**

Defendants challenge the plaintiffs' claims on several grounds.  First, they ask the Court to abstain from hearing the case on federalism grounds.  Second, they urge the Court not to exercise supplemental jurisdiction over plaintiffs' state law claims.  Third, they argue that individuals like Mr. Sevin who have paid the traffic fines have admitted their liability and are collaterally estopped from challenging that determination in a later proceeding.  Finally, they argue that individuals like Mr. Bernard, who have neither paid a fine nor challenged their citation at a hearing, lack standing to attack the constitutionality of the procedures.


**A.   *Pullman* Abstention**

The defendants first argue that the Court should abstain from hearing this case pursuant to the doctrine announced in *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).  (*See* R. Doc. 47 at 5.)  Under *Pullman*, a district court may abstain from

6

hearing a case "when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary." *Gomez v. Dretke*, 422 F.3d 264, 268 (5th Cir. 2005) (quoting ERWIN CHEMERINSKY, FEDERAL JURISDICTION 763 (4th ed. 2003).  Although federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), they may "decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (internal quotation marks omitted).  For *Pullman* abstention, that countervailing interest is rooted in federalism: "federal courts, exercising a wise discretion, restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary." *Pullman Co.*, 312 U.S. at 500 (internal quotation marks omitted); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) (noting that *Pullman* abstention is "[d]esigned to avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues").

In order for *Pullman* abstention to be appropriate, the case must present:

(1) a federal constitutional challenge to state action and

(2) an unclear issue of state law that, if resolved, would make it unnecessary for [the court] to rule on the federal constitutional question.

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Committee*, 283 F.3d 650, 653 (5th Cir. 2002).  If these requirements are met, the court must then "assess the totality of the circumstances presented by a particular case, considering the rights at stake and the costs of delay pending state court adjudication."  *Baran v. Port of Beaumont Nav. Dist. of Jefferson County Tex.*, 57 F.3d 436, 442 (5th Cir. 1995).  For example, if the litigation "has already been long delayed" or it seems "unlikely that resolution of the state-law question would significantly affect the federal claim," the court should not abstain.  *Harris County Com'rs Court v. Moore*, 420 U.S. 77, 84 (1975).  Finally, even when the court decides to abstain, "a party has the right to return to the District Court, after obtaining the authoritative state court construction for which the court abstained, for a final determination of his claim."  *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 417 (1964) (quoting *NAACP v. Button*, 371 U.S. 415, 427 (1963).  The typical procedure is for the federal court to stay the action and retain jurisdiction pending resolution of the state law issues by a state court.  *See* 17A WRIGHT, MILLER, COOPER & AMAR, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 4243 (3d ed. 2007).

In arguing for *Pullman* abstention, the defendants focus on the plaintiffs' claim that the ATSE ordinance is "preempted and voided" by the Louisiana Highway Regulatory Act ("LHRA"). (*See* R. Doc. 47 at 6.)  The defendants argue that abstention is warranted because (1) the scope of LHRA preemption is unclear and (2) a decision that the ATSE is void under state law would render the federal claims moot. (*See id.* at 5-6.)

The Court finds that the "exceptional circumstances" that make *Pullman* abstention appropriate, *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959), are not presented by this case.  With respect to the vast majority of the state law issues, plaintiffs have simply alleged that the defendants' violations of various state laws are *ipso facto* violations of the plaintiffs' federal rights under 42 U.S.C. § 1983. (*See* R. Doc. 1 at ¶ 14 (alleging that the ATSE "conflict[s] with the uniform provisions of the Louisiana Highway Regulatory Act" and that it "was enforced by the defendants while acting under color of state law, in violation of 42 U.S.C.A. § 1983"); *id.* at ¶ 15 (alleging that the ATSE "violates the provisions of Louisiana Code of Civil Procedure, Arts. § 1232 and § 1234 ... in a manner that violates plaintiffs' civil and constitutional rights, as enforced by the defendants while acting under color of state law, in violation of 42 U.S.C.A. § 1983); R. Doc. 3 at ¶ 4 (alleging that the ATSE "violates the Constitution of the State of Louisiana, Art. VI,

§ [9] ... in violation of 42 U.S.C.A. § 1983"); *id.* at ¶ 8
(alleging that the "defendants have authorized Redflex to
calibrate and/or re-calibrate the timing of traffic lights ... in
violation of public policy, the Constitution of the State of
Louisiana, and the [Manual on Uniform Traffic Control Devices] as
adopted by Louisiana," all "in violation of 42 U.S.C.A. § 1983");
*id.* at ¶ 10 (seeking "all damages allowed under 42 U.S.C.A.
§ 1983")).

Of course, it is hornbook law that "a violation of a state
statute alone is not cognizable under § 1983 because § 1983 is
only a remedy for violations of federal statutory and
constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353
(5th Cir. 2005); *see also Rector v. Denver*, 348 F.3d 935, 947
(10th Cir. 2003) ("It is well-established ... that a state's
violation of its own laws does not create a claim under § 1983).
Plaintiffs' "state law" section 1983 claims, which allege that
the defendants' violation of state law amounts to a violation of
section 1983, thus appear to be facially defective and would be
prime candidates for dismissal upon an appropriate motion.  On
these facts, the Court cannot say that there are "difficult and
unsettled questions of state law [that] must be resolved before a
*substantial* federal constitutional question can be decided."
*Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984)
(emphasis added).  Because the state law issues are likely to be

eliminated from this litigation on settled federal law grounds, irrespective of how a state court would resolve them, it is unnecessary to waste the parties' time and resources by "[s]huttling [them] between state and federal tribunals." *Clay v. Sun Ins. Office, Ltd.*, 363 U.S. 207, 228 (1960) (Douglas, J., dissenting).  Moreover, declining to abstain in these circumstances does not disregard "the rightful independence of the state governments," *Pullman Co.*, 312 U.S. at 500, because Louisiana will not be deprived of the first opportunity to interpret its own laws.  For all of the foregoing reasons, the Court finds that it should not abstain from hearing this case.

The Court also notes that two of the plaintiffs' state law claims do not specifically allege violations of section 1983. (*See* R. Doc. 1 at ¶ 17 (alleging that the ATSE "impermissibly attempts to govern civil relationships" in violation of Louisiana Constitution Article VI, § 9); R. Doc. 3 at ¶ 9 (alleging that the ATSE violates the Louisiana spousal witness privilege). Because the Court declines to exercise supplemental jurisdiction over these freestanding state law claims, *see infra*, it is unnecessary to consider whether they affect the *Pullman* analysis.


### B.   Supplemental Jurisdiction

In one of their reply briefs, the defendants urge the Court to decline to exercise supplemental jurisdiction over the

11

plaintiffs' "state law" claims.  A district court may exercise supplemental jurisdiction over any claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  If the claim falls within the court's original jurisdiction--for example, under diversity or federal question jurisdiction--supplemental jurisdiction is not the appropriate basis for the exercise of the court's jurisdiction.

As noted in the preceding section, the plaintiffs have pleaded most of their "state law" claims as violations of 42 U.S.C. § 1983.  It is well-established that a claim falls within a district court's federal question jurisdiction if "federal law creates the cause of action." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 282-83 (4th ed. 2003).  Because the plaintiffs' "state law" claims are premised upon a federal cause of action, the Court has original jurisdiction over those claims pursuant to 28 U.S.C. § 1331.  It is therefore improper to consider whether the Court should decline to exercise supplemental jurisdiction over them.  The Court notes that this ruling pertains to the jurisdictional basis for, not the merits of, plaintiffs' section 1983 claims.

With respect to the two claims pleaded as freestanding state

law claims, the Court finds that it is appropriate not to exercise supplemental jurisdiction.  Under the Judicial Improvements Act of 1990, a district court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the plaintiffs' pendent claims raise novel issues of Louisiana law that are best resolved in state court.  First, the plaintiffs allege that the ATSE "impermissibly attempts to govern civil relationships" in violation of Louisiana Constitution Article VI, § 9(A)(1).  (*See* R. Doc. 1 at ¶ 17.)  That provision has been interpreted only once by the Louisiana Supreme Court, *see Hildebrand v. City of New Orleans*, 549 So.2d 1218, 1223-24 (La. 1989), and its meaning is the subject of confusion and debate, *see New Orleans Campaign For a Living Wage v. City of New Orleans*, 825 So.2d 1098, 1111-20 (2002) (Weimer, J., concurring in the result).  The plaintiffs also allege that the ATSE violates the Louisiana spousal witness privilege, LA. CODE EVID. art. 505.  (R. Doc. 3 at ¶ 9.)  Although this evidentiary

13

privilege is often applied and interpreted in criminal prosecutions, *see, e.g., State v. Parent*, 836 So.2d 494, 503-04 (La. App. 2002), it is not clear whether and how it applies in the context of an attack on the validity of a local ordinance. In light of the novelty of the plaintiffs' claims and the unsettled nature of Louisiana law in these areas, the Court finds that the interests of comity and judicial economy are better served if all of the plaintiffs' state law claims are heard in state court. The claims based on LA. CONST. art. VI, § 9(A)(2) and LA. CODE EVID. art. 505 are therefore dismissed without prejudice to the plaintiffs' right to refile those claims in state court.

### C.   Barry Sevin

On December 31, 2007, Mr. Sevin's vehicle was photographed proceeding through an intersection as the traffic control signal emitted a steady red signal. He received a Notice of Violation on January 9, 2008, which included a $110.00 penalty. On February 15, Sevin paid the fine. Defendants contend that Sevin's payment of his fine and failure to contest liability is an admission and adjudication of liability, which collaterally estops him from now asserting that he is part of a class of people whose rights were violated.

The Full Faith and Credit Statute, 28 U.S.C. § 1738,

14

"requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 (1982); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000). This is true even when, as here, a suit raises a federal question or seeks to vindicate federal constitutional rights. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-85 (1984); *Allen v. McCurry*, 449 U.S. 90, 96-105 (1980); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985). Consequently, the Court must look to Louisiana's preclusion statute, La. Rev. Stat. § 13:4231, in order to determine the effect of Sevin's failure to contest his liability.

Although plaintiffs correctly note that Louisiana did not always recognize the doctrine of collateral estoppel, *see B.E. Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156-57 (La. 1978), the preclusion statute enacted in 1991 "embraces the broad usage of the phrase 'res judicata' to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Mandalay Oil & Gas. L.L.C. v. Energy Development Corp.*, 867 So.2d 709, 713 (La. App. 2002). Louisiana Revised Statutes 13:4231 provides in relevant part that a "valid and final judgment" entered "in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them,

15

with respect to any issue actually litigated and determined if its determination was essential to that judgment."  This provision requires that four elements must be met before an earlier "valid and final judgment" will preclude relitigation of an issue: "(1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment."  *In re Keaty*, 397 F.3d 264, 270-71 (5th Cir. 2005) (citing *Charpentier v. BG Wire Rope & Slings,* Inc., 174 B.R. 438, 44 n.1 (E.D. La. 1994); *see also Matter of Whittaker*, 225 B.R. 131 (E.D. La. 1998)).  Because § 4231 is modeled on federal preclusion doctrine and the Restatement of Judgments, federal jurisprudence may be consulted when the relevant Louisiana cases leave doubt as to the meaning of the statute.  *In re Keaty*, 397 F.3d at 271.

The Court finds that Sevin is not collaterally estopped from pursuing his claims in this lawsuit because his failure to contest the Notice of Violation did not constitute or lead to a "valid and final judgment" as that term is used in § 4231.  In *Wooley v. State Farm Fire & Cas. Ins. Co.*, 893 So.2d 746 (La. 2005), the Louisiana Supreme Court considered the types of judgments covered by § 4231.  The Louisiana Commissioner of Insurance had brought an action in a Louisiana district court

challenging the decision of a state administrative law judge (ALJ).  On appeal to the Louisiana Supreme Court, State Farm argued that § 4231 barred religitation of the ALJ's decision. The Supreme Court rejected this argument, finding that § 4231 "presuppose[s] that the judgment at issue was one wherein judicial power was exercised by an Article V [of the Louisiana Constitution] tribunal." *Wooley*, 893 So.2d at 771.  The court noted that some administrative decisions, including certain rulings by workers' compensation hearing officers, meet this criterion because the Louisiana Constitution grants them "authority to hear matters that would otherwise arise under the district courts' original jurisdiction." *Id.*  Because there was no analogous constitutional provision relating to ALJs, however, the judgment attacked by the Commissioner was "not entitled to res judicata effect." *Id.*

Like the ALJ decision in *Wooley*, Sevin's failure to contest the Notice of Violation did not constitute or lead to a "valid and final judgment" by an Article V tribunal.[3]  Indeed, the

---

[3] Though *Wooley* concerned claim preclusion rather than issue preclusion, the Court finds that the Louisiana Supreme Court's reasoning applies equally in both contexts.  The preclusion statute provides that "a valid and final judgment is conclusive between the same parties" in three situations, two of which relate to claim preclusion and the other of which relates to issue preclusion.  LA. REV. STAT. 13:4231.  The language interpreted by the Louisiana Supreme Court--"valid and final judgment"--is a prerequisite for any of the three types of preclusion.  *See* LA. REV. STAT. 13:4231 cmt. d.  Neither the statute not *Wooley* gives any indication that the "valid and final

defendants have not directed the Court's attention to any
judgment rendered against Sevin by a court or administrative
officer.  To support their preclusion argument, defendants cite
the language of the ATSE, which states that:

> An owner who fails to pay the fine and/or enforcement costs
> imposed under this article or to timely contest liability
> for said fines and/or costs shall be considered to have
> admitted liability for the full amount of the fines and
> costs stated in the notice of violation mailed to the person
> and the matter will be turned over to the district
> attorney's office for further prosecution and collection.

ATSE § 36-313.  It is not clear from this provision whether
payment of the fine constitutes a "failure to contest liability,"
as the ordinance clearly contemplates "further prosecution and
collection" with respect to individuals who fail to contest
liability.  But even if payment does amount to a legally binding
admission under the ordinance, there still is no judgment by an
Article V tribunal that will be entitled to preclusive effect.

The defendants cite *Kovach v. District of Columbia*, 805 A.2d
957 (D.C. 2002), a decision by the District of Columbia Court of
Appeals, for the proposition that § 4231 applies to
"determinations by agencies other than courts, when such agencies
are acting in a judicial capacity."  But the local rule in the
District of Columbia has little bearing on the proper
interpretation of § 4231, because the Louisiana Supreme Court has
spoken authoritatively on the matter.  As such, only judgments

judgment" rule is limited to claim preclusion.

rendered by Article V tribunals, or officers vested with similar powers under the Louisiana Constitution, are entitled to preclusive effect under § 4231.

### D.  Edwin Bernard

Plaintiff Edwin Bernard received his first Notice of Violation in November of 2007.  Pursuant to the directions on the Notice of Violation, he requested a hearing to contest his liability, which was scheduled for May 27, 2008.  Mr. Bernard received an additional Notice in November 2007, but did not pay the fine or request a hearing.  Then he received a third Notice of Violation in January 2008, and requested a hearing, which was scheduled for July 2008.  Finally, Mr. Bernard received a fourth Notice of Violation on January 15, 2008, and chose not to pay the fine or request a hearing.  Each Notice of Violation provides that Mr. Bernard owes a penalty of $110.00. (*See* R. Docs. 16-10 - 16-19.)

Defendants challenge Mr. Bernard's standing to prosecute his claims, arguing that he has neither taken advantage of the administrative process provided by the Parish, nor has he paid any fines to the Parish.  Pursuant to Article III, § 2 of the U.S. Constitution, the federal judicial power extends only to justiciable cases and controversies.  As part of the case or controversy requirement, a plaintiff must demonstrate that he has

standing, that is, that he is the proper party to assert the claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); ERWIN CHEMERINSKY, FEDERAL JURISDICTION 56 (4th ed. 2003). Standing ensures that a plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

The party invoking federal jurisdiction bears the burden of establishing three elements. *Lujan*, 504 U.S. at 561. "First, the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 560. Second, "there must be a causal connection between the injury and the conduct complained of--the injury has to be 'fairly trace[able] to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court." *Id*. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id*. at 561.

Bernard's claims satisfy the requisites for standing. As noted above, a threatened but as yet unrealized injury is often sufficient to establish standing. *See also Los Angeles v. Lyons*,

20

461 U.S. 95, 101-02 (1983).  In this case, Bernard has alleged

two types of threatened injury that are personal to him: economic

injury and constitutional injury.  Defendants have sent him four

Notices of Violation.  Bernard requested hearings in response to

two of the Notices and did not respond to the others.  Both

courses of action have exposed him to the imminent threat of

prosecution or other enforcement action by the Parish.[4]

Section 36-308 of the ATSE provides that "[f]ailure to

perform by paying the fine or contesting the fine will result in

a second notification to the vehicle owner, and an additional

late payment penalty of a minimum of twenty-five dollars."  If

the vehicle owner fails to respond to the second Notice of

Violation, "the violation will be sent to the Jefferson Parish

First and Second Parish Courts, and processed for review by the

Jefferson Parish District Attorney's Office to be handled in a

manner consistent with that of a parking violation."  Section 36-

313 of the ATSE further provides:

> An owner who fails to pay the fine and/or enforcement costs
> imposed under this article or to timely contest liability
> for said fines and/or costs shall be considered to have
> admitted liability for the full amount of the fines and
> costs stated in the notice of violation mailed to the person
> and the matter will be turned over to the district
> attorney's office for further prosecution and collection.

---

[4] One of the issues in this case is whether the penalties
imposed by the ATSE are civil or criminal in nature.  The Court
finds it unnecessary to resolve the issue at this time because
the threatened injury is sufficient for standing purposes no
matter how it is characterized.

It is clear from these provisions that Bernard has alleged an imminent injury with respect to the uncontested tickets. Because Bernard failed to respond to the Notices of Violation, he "went into default," as the defendants put it.  (R. Doc. 16-6 at 5; *see also* R. Doc. 16-9 at 1.)  Under the plain terms of the ATSE, Bernard is now subject to "further prosecution and collection."  ATSE § 36-313.  This type of "conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III." *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Where, as here, a party faces a "real and genuine threat of prosecution," *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1360 (10th Cir. 1981), he has standing to contest the legal basis of the threatened action.  *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 543 (5th Cir. 2008) (finding that plaintiffs had standing "because some Plaintiff bar owners have been charged under the [challenged] ordinance and all Plaintiff bar owners face the real potential of immediate criminal prosecution").  Because there is nothing in the record to indicate that Bernard is unlikely to be prosecuted, the Court finds that he has standing to challenge the ATSE ticketing process.

The result is the same with respect to the Notices of Violation that Bernard has decided to challenge.  Though the ATSE

22

does not specify a particular procedure to be followed when a motorist contests a fine, it is reasonable to assume that Bernard will receive a hearing before some government officer and will be found liable or not liable.  If he is found liable, he will then be required to pay the prescribed fine plus "any costs assessed for the enforcement" of the ATSE.  ATSE § 36-309.  Moreoever, "any court which handles any part of the prosecution for a violation under [the ATSE] may impose costs upon the person responsible for the fine in addition to the fine and enforcement costs imposed under this article."  *Id.*  By contesting two tickets, Bernard has thus exposed himself to the imminent threat of economic deprivation.

Turning to the second and third standing factors, the Court finds that Bernard's injuries are traceable to the defendants' conduct and that they are redressable.  The anticipated injuries--fines collected pursuant to allegedly defective procedures--will be directly caused by the defendants' conduct.  The Jefferson Parish Council created the challenged procedures by enacting the ATSE.  Jefferson Parish and Redflex jointly collect fines pursuant to the ATSE and the Jefferson Parish District Attorney initiates prosecutions against individuals who fail to pay their fines or contest liability.  But for the defendants actions, there would be no threatened injury for Bernard to challenge. Moreover, if the Court were to find in Bernard's favor and impose

damages, his injuries would be redressed.  For these reasons, the
Court finds that Bernard's injury is imminent, traceable to
defendants' conduct, and redressable by court action.

Defendants rely heavily on a case from the Middle District
of North Carolina, *Shavitz v. City of High Point*, 270 F. Supp. 2d
702 (M.D.N.C. 2003), to support their standing argument.  The
*Shavitz* court, however, appears to have confused the "injury in
fact" requirement with the separate inquiry, not necessarily
related to standing, into whether the plaintiff has stated a
valid claim for relief.[5]  The plaintiff in that case had failed
to pay or contest tickets issued pursuant to an ordinance similar
to the ATSE.  Citing a Fourth Circuit case that did not discuss
standing, the district court found that a due process violation
under § 1983 "is not complete unless and until the State fails to
provide due process."  *Id.* at 710 (quoting *Fields v. Durham*, 909
F.2d 94, 98 (4th Cir. 1990)).  Based upon this interpretation of
the Due Process Clause, the court held that the plaintiff did not
have standing because he had not taken advantage of the hearing
procedures established by the city and therefore had not suffered
the requisite due process injury.  *See id.* at 711.

The *Shavitz* court's analysis confuses the standing inquiry

---

[5] The Court notes that *Shavitz* was later described as
"unpersuasive" by a different section of the same court.  *Ashley
v. National Labor Relations Bd.*, 454 F. Supp. 2d 441, 445
(M.D.N.C. 2006).

24

with the merits inquiry.  Questions about the proper
interpretation of the Due Process Clause, which the *Shavitz* court
treated as part of the "injury in fact" requirement, go to the
validity of the plaintiff's claim.  But the Supreme Court has
never held that a valid legal claim for relief is a necessary
prerequisite for standing;[6] indeed, it has consistently treated
the two questions separately.  In *Hardin v. Kentucy Utilities
Co.*, 390 U.S. 1 (1968), for example, the Court found that the
plaintiff had standing to sue even though the Court ultimately
rejected the plaintiff's legal claims on the merits.  390 U.S. at
7, 13; *see also Roark & Hardee LP*, 522 F.3d 533 (finding that
plaintiff bar owners had standing to challenge city ordinance,
but rejecting constitutional challenges on the merits).  The
Court has even pointed out that there is a "fundamental
distinction between arguing no cause of action and arguing no
Article III redressability." *Steel Co. v. Citizens for a Better
Environment*, 523 U.S. 83, 96 (1998).

More recently, the Supreme Court has emphasized that it is
not only unnecessary, but improper, for a district court to
address the validity of the plaintiff's claim as part of the
standing analysis.  As the Court has explained, a district court

---

[6] Justice Frankfurter once suggested that only legal
injuries could give rise to standing, *see Joint Anti-Fascist
Refugee Committee v. McGrath*, 341 U.S. 123, 152 (1951)
(Frankfurter, J., concurring), but his view has not prevailed.

may address merits questions only *after* it has satisfied itself that the plaintiff has standing.  *See Steel*, 523 U.S. at 93-102; *see also Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction ... ."); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.").  To do otherwise, "to pronounce upon the meaning or the constitutionality of a state or federal law when [the court] has no jurisdiction to do so," is, "by very definition, for a court to act ultra vires." *Steel Co.*, 523 U.S. at 101.  In light of these strict admonitions, this Court would be remiss if it incorporated an assessment of the adequacy of Jefferson Parish's adjudication procedures, or the plaintiff's failure to take advantage of those procedures, into its standing analysis. The Court therefore declines to do so, and rests on its conclusion that Bernard has standing to assert his claims.

    Viewed at a more general level, this conclusion should be unsurprising.  The purpose of the standing requirement is to ensure that the specific party bringing suit has been injured "in a concrete and personal way." *Massachusetts v. E.P.A.*, 127 S. Ct. 1438, 1453 (2007) (quoting *Lujan*, 504 U.S. at 581 (Kennedy, J., concurring)); *see also Lujan*, 504 U.S. at 560 n.1 ("[T]he injury must affect the plaintiff in a personal and individual

way."). Typically, cases dismissed due to lack of standing involve citizens or organizations who seek redress for an injury that falls generally on the public. *See, e.g.*, *Lujan*, 504 U.S. at 578 (holding that environmental organizations did not have standing to challenge a federal agency's interpretation of the Endangered Species Act); *Massachusetts v. Mellon*, 262 U.S. 447, 486-89 (1923) (holding that taxpayers did not have standing to challenge government expenditures). As the Supreme Court noted in *Lujan*, when "the plaintiff is himself an object of the action (or forgone action) at issue," there "is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." 504 U.S. at 561-62. As it is beyond dispute that Bernard is "an object of" defendants' allegedly unconstitutional ticketing and enforcement procedures, he has standing to maintain the present action.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DISMISSES the plaintiffs' claims based on LA. CONST. art. VI, § 9(A)(2) and LA. CODE EVID. art. 505 without prejudice and DENIES the defendants' motions in all other respects.


New Orleans, Louisiana, this 16th day of December, 2008.


*Sarah Vance*
_____
Sarah S. Vance
United States District Judge