UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BARRY SEVIN, ET AL.                    CIVIL ACTION

VERSUS                                 NO: 08-802

PARISH OF JEFFERSON, ET AL.            SECTION: R


## ORDER AND REASONS

Before the Court are defendants' motions to dismiss for
failure to state a claim or, in the alternative, motions for
summary judgment.  R. Doc. 90, 96.  Also before the Court is
plaintiffs' cross-motion for summary judgment.  R. Doc. 101.  For
the following reasons, the Court GRANTS the defendants' motions
and DENIES the plaintiffs' motion.


## I.    BACKGROUND

On June 20, 2007, the Jefferson Parish Council enacted
Ordinance Number 23083, known as the Automated Traffic Signal
Enforcement Ordinance (ATSE).  The ATSE authorizes the
installation of camera systems at traffic intersections and the
assessment of fines to the owners of vehicles that are
photographed passing through a steady red signal.  The plaintiffs

in this case were allegedly photographed by an ATSE-authorized camera system and were issued a notice of violation for running a red light in Jefferson Parish. On January 31, 2008, they filed an action against Jefferson Parish, the Jefferson Parish Council, and the private operator of the cameras, Redflex Traffic Systems, alleging deprivations of their civil rights in violation of 42 U.S.C. § 1983.

According to the complaint, the defendants began enforcing the ATSE in October of 2007. The ATSE sets forth certain procedures that must be followed when an authorized camera gathers evidence of a traffic violation. When a vehicle is photographed violating a red traffic signal, the owner of the camera equipment (Redflex) must send a Notice of Violation to the owner of the vehicle. JEFFERSON PARISH CODE OF ORDINANCES § 36-311. The owner then has thirty days within which to pay a fine or to contest the fine. *Id.* § 36-308. The authorized fine cannot exceed $175 per violation, and the imposition of liability does not result in notification of the Louisiana Department of Motor Vehicles or the vehicle owner's insurance company. *Id.* § 36-309, -313.

If the vehicle owner does not pay or contest the fine within thirty days, he will be assessed an additional $25 late payment penalty. *Id.* § 36-308. If the owner does not respond after receiving a second notification, the violation will be sent to

the Jefferson Parish District Attorney's Office "to be handled in a manner consistent with that of a parking violation." *Id.* The ATSE provides that there "shall be a rebuttable presumption that the that the person [in] whose name the vehicle is registered was the operator of the vehicle at the time the alleged violation was committed." *Id.* If the vehicle owner alleges that he was not operating the vehicle at the time of the violation, he "has the responsibility through sworn statement to prove that someone else ... was driving the vehicle at the time the violation occurred." *Id.* § 36-310. Finally, the ATSE provides that the camera equipment owner may submit an affidavit containing certain information relating to the circumstances of the violation for consideration in a court proceeding. *Id.* § 36-312. Such an affidavit "is *prima facie* evidence of the alleged violation." *Id.*

Plaintiffs have pleaded a broad-ranging case under the Civil Rights Act of 1871, 42 U.S.C. § 1983. They allege that aspects of the ATSE violate the Fifth, Sixth, and Fourteenth Amendments to the federal constitution. The named plaintiffs seek to represent a class of automobile owners who received notices of violation under the ATSE. They putative class members fall into four groups: (1) individuals who received a notice of violation and paid the fine; (2) individuals who received a notice of violation and requested a hearing to contest their liability, but

who have not yet attended the hearing; (3) individuals who received a notice of violation and have neither paid a fine nor contested their liability; and (4) individuals who contested their liability and were found liable.

The Court previously ruled on the defendants' motions to dismiss and found that the plaintiffs have standing to bring their claims and that the individuals who voluntarily paid the fines are not collaterally estopped from contesting their liability. *See* R. Doc. 68. Defendants have now filed motions to dismiss for failure to state a claim, or, in the alternative, motions for summary judgment. R. Docs. 90, 96. These motions challenge the merits of plaintiffs' constitutional claims. The plaintiffs have filed a cross-motion for summary judgment. R. Doc. 101. The Court addresses the parties' arguments as follows.

## II. LEGAL STANDARD

Because the parties' motions present matters outside the pleadings, the Court will treat them as motions for summary judgment. *See* Fed. R. Civ. P. 12(d). Summary judgment is appropriate when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or,

4

in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. STATE LAW CLAIMS

The Court turns first to the plaintiffs' state law claims. The plaintiffs originally sought to assert several independent state law claims under the Court's supplemental jurisdiction.

The Court dismissed those claims on December 16, 2008, finding that "the interests of comity and judicial economy are better served if all of the plaintiffs' state law claims are heard in state court." R. Doc. 68 at 14. As the Court noted at that time, however, the plaintiffs also pleaded a number of "state law" claims as violations of section 1983. *See, e.g.*, Second Amended Compl., R. Doc. 24 at ¶ 26 (alleging that the ATSE conflicts with articles 1232 and 1234 of the Louisiana Code of Civil Procedure "in a manner that violates plaintiffs' civil and constitutional rights, as enforced by the defendants while acting under color of state law, in violation of 42 U.S.C.A. § 1983"). The Court suggested that those claims "appear[ed] to be facially defective," R. Doc. 68 at 10, but it did not dismiss them at the time because the issue had not been squarely presented.

The defendants have now asked the Court to dismiss the state law-based section 1983 claims on the ground that section 1983 does not provide a remedy for deprivations of state-created rights. The plaintiffs do not appear to dispute the defendants' legal conclusion. *See* R. Doc. 94-1 (recognizing that "[a] state's violation of its own laws does not automatically give rise to a [section] 1983 claim"). Indeed, it is well-settled that "a violation of a state statute alone is not cognizable under [section] 1983 because [section] 1983 is only a remedy for violations of federal statutory and constitutional rights."

6

*Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *see also*
*Rector v. Denver*, 348 F.3d 935, 947 (10th Cir. 2003) ("It is
well-established ... that a state's violation of its own laws
does not create a claim under § 1983."). The purpose of section
1983 is to guarantee federal rights, not to give parties a right
to air their state-law grievances in federal court. The
defendants' motions for summary judgment must therefore be
granted as to the plaintiffs' state law-based section 1983
claims. Second Amended Compl., R. Doc. 24 at ¶¶ 20-29.

In apparent recognition of the infirmity of their state law-
based section 1983 claims, the plaintiffs have used their summary
judgment briefs as an opportunity to recast five of those claims
as allegations that the defendants violated the Due Process
Clause of the Fourteenth Amendment. *See* Mem. in Opp. to Parish's
Motion for Summary Judgment, R. Doc. 94 at 6-16 (arguing that
enforcement of the ATSE violates the Due Process Clause because,
*inter alia*, the ordinance authorizes service of the Notice of
Violation in a manner that allegedly conflicts with the service
provisions of the Louisiana Code of Civil Procedure). Plaintiffs
have not filed a motion to amend their complaint to reflect this
new theory. In any case, their due process arguments fail as
well, for reasons described below. *See infra*.

**IV. CONSTITUTIONAL CLAIMS - THRESHOLD ISSUES**

**A. Criminal Penalty versus Civil Violation**

The parties have devoted substantial attention to the question of whether the ATSE establishes a criminal penalty or a civil penalty. As both sides correctly recognize, the classification of the ordinance determines which procedures are constitutionally required. *See, e.g.*, *United States v. Ward*, 448 U.S. 242, 248 (1980) (listing several constitutional guarantees that apply only in criminal proceedings).

The Supreme Court has explained that determining whether a penalty is civil or criminal in nature is principally a matter of statutory interpretation. *Hudson v. United States*, 522 U.S. 93, 99 (1997). This is often a straightforward inquiry, as many statutes clearly state whether they are intended to be civil or criminal. *See, e.g.*, *Ware v. Lafayette City-Parish Consolidated Government*, No. 08-218, slip op. at 9 (W.D. La. Jan. 6, 2009) (Magistrate Judge's Report and Recommendation) (finding that Lafayette City-Parish's traffic camera ordinances were civil in nature because the ordinances contain "repeated references to 'civil citations' and 'civil penalties'"); NEW ORLEANS CODE OF ORDINANCES § 154-1702 (Automated Traffic Enforcement System) (referring to "[a]dministrative adjudications," "civil penalt[ies]," and "civil liability"). With the ATSE, however, there is no clear-cut answer. As the parties' briefs illustrate,

the ordinance is far from a model of clarity as to what the Jefferson Parish Council intended.

In addition, the evidence points in different directions depending upon which sources are considered. The Supreme Court has not squarely decided whether sources other than the statutory text itself--such as state court decisions and state executive branch practices--may be taken into account when the Court determines whether a statute is civil or criminal in nature. *Compare Hudson*, 522 U.S. at 104 ("[W]e look only to 'the statute on its face' to determine whether a penalty is criminal in nature.") (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963)), *and Smith v. Doe*, 538 U.S. 84, 106 (2003) (Thomas, J., concurring) ("[T]he determination whether a scheme is criminal or civil must be limited to the analysis of the obligations actually created by statute."), *with Seling v. Young*, 531 U.S. 250, 266 (2001) ("This case gives us no occasion to consider ... the extent to which a court may look to actual conditions of confinement and implementation of the statute to determine in the first instance whether a confinement scheme is civil in nature."), *Smith*, 538 U.S. at 99 (considering "[t]he fact that Alaska posts [sex offender] information on the Internet," despite the lack of any reference to internet notification in the statute), *and Seling*, 531 U.S. at 267-70 (Scalia, J., concurring) (arguing that courts can look beyond the face of the statute in

limited circumstances). This methodological debate has more than theoretical implications for this case. If this Court were to consider nonstatutory sources, the case for classifying the ATSE as a criminal ordinance would be greatly strengthened. *See, e.g.*, Mem. in Support of Pls.' Motion for Summary Judgment, R. Doc. 101-27 at 8-12; Broussard Aff., R. Doc. 132.

The Court finds it unnecessary to wade into this constitutional thicket because it is plain that the plaintiffs' claims are meritless irrespective of how the ATSE is classified. In other words, the plaintiffs have not shown that the ATSE is unconstitutional even if, as they argue, it should be considered a criminal ordinance. In explaining why this is so, the Court will first assume for the sake of argument that the ATSE is a criminal ordinance. After considering each of the plaintiffs' constitutional claims under that assumption, the Court will then assume that the ATSE is a civil ordinance. As the following discussion will demonstrate, the defendants have shown that they are entitled to judgment as a matter of law irrespective of whether the ordinance is classified as civil or criminal.

### B. Facial Challenge versus As-Applied Challenge

Before turning to the merits of the plaintiffs' claims, the Court must identify the relevant inquiry. The plaintiffs have made it clear in their pleadings and other filings that they are

10

mounting a facial challenge to the ATSE rather than an as-applied challenge. Although the named plaintiffs and putative class members have had individual encounters with Jefferson Parish's efforts to enforce the ATSE, the plaintiffs have not alleged any facts that would permit the Court to determine that the ATSE is unconstitutional as applied in one or more of those particular proceedings. They have not argued, for example, that an individual plaintiff's right to confront adverse witnesses was violated in a particular proceeding. Rather, they have argued that "[a]ll of the putative class members share the same issue of law and fact, *i.e.*, the ATSE ordinance is invalid and its enactment and enforcement by defendants violates plaintiffs' constitutional rights and procedural due process rights ... ." Second Amending Compl., R. Doc. 24 at ¶ 30. This is clearly a facial challenge to the ATSE.

Four factors buttress this understanding of the plaintiffs' challenge. First, the plaintiffs have asked the Court to "strik[e] the ATSE ordinance as unconstitutional and/or in violation of Louisiana law," rather than asking the Court to enjoin its enforcement as to any particular plaintiff. Second Amending Compl., R. Doc. 24 at ¶ 30. Second, in attempting to show that this action is suitable for determination on a class-wide basis, the plaintiffs have expressly argued that the facts of each putative class member's case are not relevant to the

11

merits of his or her claims. *See* Mem. in Support of Pls.' Motion for Class Cert., R. Doc. 77-2 at 12 ("None of the asserted claims involve burdens of proof or elements of causation that are unique to individuals within the proposed class definition, as the same facts would be introduced to support the same claims against the Defendants were each class member allowed to proceed individually."). Third, the plaintiffs have introduced evidence from individual proceedings for the sole purpose of illustrating *general* characteristics of the ATSE enforcement scheme.[1] *See, e.g.*, Mem. in Support of Pls.' Motion for Summary Judgment, R. Doc. 101-27 at 17 (using evidence to show that violations of the ATSE "are prosecuted in the First Parish Court in the identical manner as misdemeanors under LSA-R.S. 32:57."). Finally, in an attempt to stave off a possible jurisdictional challenge, the plaintiffs have argued that they "are not appealing individual ATSE findings of guilt." Reply Mem. in Support of Pls.' Motion for Summary Judgment, R. Doc. 112-3 at 4; *see also id.* (arguing that Timothy Morales, the only named plaintiff to contest his liability at a hearing, "is not before this Court as a *Rooker-Feldman* 'state court loser' seeking this Court to overturn his

---

[1] With respect to the civil/criminal question that has occupied so much of the parties' attention, this is the only possible purpose for which the evidence can be considered because an otherwise "civil" ordinance "cannot be deemed punitive 'as applied' to a single individual." *Seling v. Young*, 531 U.S. 250, 267 (2001).

ATSE conviction ..., but instead is one of a class of plaintiffs herein challenging the underlying constitutional validity of the ATSE"). All of these factors demonstrate that the plaintiffs' challenge to the ATSE is facial rather than as-applied.

Because the plaintiffs' challenge is facial, the plaintiffs face a heavy burden to show that the ATSE is unconstitutional. As the Supreme Court has recently stated,

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.

*Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1191 (2008) (internal citations and quotation marks omitted).

Under controlling Supreme Court and Fifth Circuit precedents, the relevant question for a court assessing a facial challenge is whether the plaintiffs can demonstrate that the statute is "unconstitutional in all of its applications," or, in other words, whether "no set of circumstances exists under which the Act would be valid." *Washington State Grange*, 128 S. Ct. at

1190; *see also Hersh v. United States* ex rel*. Mukasey*, 553 F.3d
743, 762 n.23 (5th Cir. 2008); *Center for Individual Freedom v.*
*Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006); *United States v.*
*Robinson*, 367 F.3d 278, 290 (5th Cir. 2004); *United States v.*
*Martinez*, 599 F. Supp. 2d 784, 792 n.4 (W.D. Tex. 2009).  "The
fact that [a statute] might operate unconstitutionally under some
conceivable set of circumstances is insufficient to render it
wholly invalid ... ."  *United States v. Salerno*, 481 U.S. 739,
745 (1987).  Because the parties have not pointed to any material
fact that is genuinely at issue, *see, e.g.*, Plaintiffs' Statement
of Contested Material Facts, R. Doc. 94-2 (listing only disputed
issues of law and immaterial factual disputes), the Court's task
in resolving the present cross-motions for summary judgment is to
determine whether any of the plaintiffs' constitutional arguments
establish that the ATSE is facially invalid.


**V.  CONSTITUTIONAL CLAIMS - CRIMINAL**

The defendants have moved for summary judgment on the ground
that plaintiffs' constitutional claims are meritless.  *See* Mem.
in Support of Defs.' Motion for Summary Judgment, R. Doc. 90-4 at
1.  Plaintiffs have advanced six grounds of constitutional
infirmity: (1) the ATSE violates the Double Jeopardy Clause of
the Fifth Amendment; (2) the ATSE violates the Self-Incrimination
Clause of the Fifth Amendment; (3) the ATSE violates the

14

Confrontation Clause of the Sixth Amendment because a camera cannot be cross-examined; (4) the ATSE violates the Due Process Clause of the Fourteenth Amendment by creating an unconstitutional presumption; (5) the ATSE violates the Due Process Clause of the Fourteenth Amendment by vesting decisionmaking authority in an interested party; and (6) the ATSE violates the Due Process Clause of the Fourteenth Amendment by violating state law.[2] None of these claims has legal merit. In explaining why this is so, the Court will first assume that the ATSE is a criminal ordinance.

### A. Double Jeopardy Clause

The plaintiffs' first theory is that the ATSE violates the Double Jeopardy Clause because there is a possibility that a violator who is photographed by a traffic camera will also be ticketed by a police officer. This argument amounts to no more than speculation and is not a proper basis for challenging the facial validity of the ATSE. The plaintiffs have produced no evidence to show that there has been or will be a Double Jeopardy violation, nor have they made an argument explaining why such

---

[2] Plaintiffs also argue that Jefferson Parish has reduced the duration of yellow signals "in order to trap motorists." Mem. in Opp. to Parish's Motion for Summary Judgment, R. Doc. 94 at 24. They have not explained the constitutional significance of this allegation, however, and the Court therefore declines to consider their argument.

violations necessarily flow from the enforcement of the ATSE. Indeed, they have failed to show that Double Jeopardy violations are even likely. Given that the traffic cameras are in plain view at particular intersections, it is unreasonable to assume that parish police officers will waste their time issuing citations to motorists at those intersections.

The plaintiffs have failed to show that "no set of circumstances exists" under which enforcement of the ATSE would be permissible under the Double Jeopardy Clause. *Robinson*, 367 F.3d at 290. To the contrary, the ATSE has been enforced for one and one-half years without raising any apparent Double Jeopardy issues. Plaintiffs' bare speculation as to what could *theoretically* happen is an insufficient basis on which to find a statute facially unconstitutional. *Cf. Washington State Grange*, 128 S. Ct. at 1193-94 ("Each of [respondents'] arguments rests on factual assumptions about voter confusion, and each fails for the same reason: In the absence of evidence, we cannot assume that Washington's voters will be misled."). Plaintiffs' Double Jeopardy argument is therefore meritless as a matter of law.


**B.  Self-Incrimination Clause**

The plaintiffs' next argument is that the ATSE violates the Self-Incrimination Clause of the Fifth Amendment, which provides that no person shall be "compelled in any criminal case to be a

16

witness against himself." U.S. CONST. amend. V.  Plaintiffs first

claim that the introduction of a photograph of their vehicle

violates their Fifth Amendment rights.  This argument is

meritless.  The Supreme Court has interpreted the Self-

Incrimination Clause to "protect[] an accused only from being

compelled to testify against himself, or otherwise provide the

State with evidence of a testimonial or communicative nature."

*Schmerber v. California*, 384 U.S. 757, 761 (1966).  This

protection does not extend to evidence that is demonstrative,

physical, or real.  *United States v. Brown*, 920 F.2d 1212, 1215

(5th Cir. 1991), *overruled on other grounds*, *United States v.*

*Candia*, 454 F.3d 468, 473 (5th Cir. 2006); *see also United States*

*v. Dionisio*, 410 U.S. 1, 7 (1973) (holding that voice exemplar is

not testimonial); *Gilbert v. California*, 388 U.S. 263, 265-67

(1967) (holding that handwriting exemplar is not testimonial);

*Schmerber*, 384 U.S. at 761 (holding that a blood sample is not

testimonial); *United States v. Hook*, 471 F.3d 766, (7th Cir.

2006) (holding that DNA sample is not testimonial); *Williams v.*

*Schario*, 93 F.3d 527, 529 (8th Cir. 1996) (holding that

fingerprints are not testimonial).  A photograph of vehicle

passing through a public intersection is not testimonial

evidence, *see Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir.

1989) (holding that a photograph of a police line-up is not

testimonial evidence), and its introduction into evidence is

therefore not barred by the Fifth Amendment.

Plaintiffs also argue that the ATSE compels them to be witnesses against themselves because it provides that a ticketed vehicle owner who alleges "that he was not the driver of the vehicle at the time of the violation has the responsibility through sworn statement to prove that someone else other than the vehicle owner was driving the vehicle at the time the violation occurred." JEFFERSON PARISH CODE OF ORDINANCES § 36-310. This provision does not compel the defendant to testify, however. The defendant can produce the sworn statement of the actual driver, or another witness, in his defense. The statute simply provides that a defendant who alleges that he was not the driver "has the responsibility" to present a sworn statement, which indicates that it is the defendant's burden to come forward with such evidence. The Court addresses the placement of this burden below. *See infra*. As for the Fifth Amendment, the plaintiffs have not shown that enforcement of the ATSE is likely to lead to Self-Incrimination Clause violations, let alone demonstrated that "no set of circumstances exists" under which an ATSE prosecution would not raise such problems. *Robinson*, 367 F.3d at 290. Plaintiffs' Self-Incrimination Clause arguments must be rejected as a matter of law.

**C.    Confrontation Clause**

The plaintiffs next argue that the ATSE violates their Sixth Amendment right to be confronted with the witnesses against them because the traffic cameras cannot be cross-examined.  The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  As the plain text of the Clause suggests, its application is limited to "*witnesses* against the accused--in other words, those who bear testimony."  *Crawford*, 541 U.S. at 51 (emphasis added); *see also Davis v. Washington*, 547 U.S. 813, 821 (2006) ("A critical portion [of the holding in *Crawford*] is the phrase 'testimonial statements.'  Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."); *Giles v. California*, 128 S. Ct. 2678, 2694 (2008) (Alito, J., concurring) ("The Confrontation Clause does not apply to out-of-court statements unless it can be said that they are the equivalent of statements made at trial by 'witnesses.'").  "Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Crawford*, 541 U.S. at 51.  Because a camera is not a witness that is amenable to cross-examination, and because a photograph of a vehicle is not a "testimonial statement," introduction of the Redflex photographs into evidence

does not implicate the Confrontation Clause.  *See United States v. Beach*, 196 Fed. Appx. 205, 209 (4th Cir. 2006) (holding that the introduction of photographs of missing evidence did not violate the Confrontation Clause).  Plaintiffs' argument to the contrary is meritless.

### D.   Due Process - Unconstitutional Presumptions

The plaintiffs next claim that the ATSE violates their due process rights because it provides that the equipment owner's affidavit "is *prima facie* evidence of the alleged violation." JEFFERSON PARISH CODE OF ORDINANCES § 36-312.  Although the plaintiffs do not fully elaborate this argument, they appear to be referring to the line of cases addressing burdens of proof and presumptions in criminal prosecutions.  The Supreme Court has explained that the Due Process Clause "prohibits the State from using evidentiary presumptions ... that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime."  *Francis v. Franklin*, 471 U.S. 307, 313 (1985); *see also Sandstrom v. Montana*, 442 U.S. 510 (1979); *County Court of Ulster County v. Allen*, 442 U.S. 140, 156 (1976); *In re Winship*, 397 U.S. 358 (1970); *Leary v. United States*, 395 U.S. 6, 36 (1969).

The degree of scrutiny to be given to a particular presumption depends upon whether the presumption is mandatory or

permissive.  *See Franklin*, 471 U.S. at 313-15.  A mandatory presumption "instructs the [trier of fact] that it must infer the presumed fact if the State proves certain predicate facts."  *Id.* at 314.  Such presumptions are constitutionally impermissible if they have the effect of relieving the State of its burden of persuasion on an element of an offense.  *Id.*  A permissive presumption, on the other hand, suggests to the trier of fact that a certain conclusion *may* be drawn from predicate facts, but does not require the trier of fact to draw that conclusion.  *Id.* Permissive presumptions do not relieve the State of its burden of proof and are therefore constitutionally invalid "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the [trier of fact]." *Id.* at 314-15.  Moreover, because permissive presumptions must be assessed in light of the facts presented at trial, they can be challenged only as-applied to a particular defendant.  *See Allen*, 442 U.S. at 162-63.

The constitutionality of a presumption is typically tested on direct or collateral review of a criminal conviction.  *See, e.g.*, *Robertson v. Cain*, 324 F.3d 297, 302-04 (5th Cir. 2003) (considering constitutionality of jury instruction in *habeas corpus* proceeding); *United States v. White*, 972 F.2d 590, 597-98 (5th Cir. 1992) (considering constitutionality of jury instruction on direct appeal).  That posture allows the reviewing

court to assess the challenged presumption as it was actually presented to and used by the trier of fact and facilitates classification of the presumption as mandatory or permissive. *Cf. Franklin*, 471 U.S. at 315 (holding that potentially unconstitutional jury instructions "must be considered in the context of the charge as a whole"). Thus, while there are many cases reviewing jury instructions, *see, e.g.*, *Sandstrom*, 442 U.S. 510, and reviewing findings made by the judge in a non-jury trial, *see, e.g.*, *Winship*, 397 U.S. 358, this Court is unaware of any case in which a statutorily-created presumption was declared unconstitutional on its face. *Cf. Stone v. Maher*, 527 F. Supp. 10, 15 (D. Conn. 1980) (refusing to enjoin enforcement of statute that was "reasonably susceptible of a construction that would render it constitutional").

In any case, the plaintiffs have not shown that the ATSE is "unconstitutional in all of its applications." *Washington State Grange*, 128 S. Ct. at 1190. Plaintiffs' argument rests on the assumption that the ATSE establishes a mandatory presumption and that the presumption will consistently be applied in a way that relieves the State of its burden of proof. Nothing in the ATSE compels that reading, however. The ATSE provides that an affidavit from the owner of the camera equipment "is *prima facie* evidence" of a violation. JEFFERSON PARISH CODE OF ORDINANCES § 36-312. Relevant Louisiana jurisprudence indicates that this

22

language must be construed as establishing a permissive
presumption.  In *State v. Caruso*, 733 So.2d 1169 (La. 1999), the
Louisiana Supreme Court interpreted the phrase "shall be
presumptive evidence" in a criminal statute as creating a
permissive presumption.  *Caruso*, 733 So. 2d at 1172.  The
Louisiana Supreme Court specifically noted that many Louisiana
criminal statutes contain the language "shall be presumptive
evidence" or "shall be *prima facie* evidence," and held that such
language must be interpreted as creating a permissive presumption
in order to avoid constitutional difficulties.  *Id.; see also*
*State v. Lindsey*, 491 So.2d 371 (La. 1986) (same); *State v. West*,
568 So.2d 1019 (La. 1990) (vacating a criminal conviction that
appeared to rest on an unconstitutional mandatory presumption).
Basic principles of Louisiana criminal procedure support this
understanding.  *See* LA. REV. STAT. § 15:271 ("The plea of not
guilty throws upon the state the burden of proving beyond a
reasonable doubt each element of the crime necessary to
constitute the defendant's guilt.").  The plaintiffs have not
presented any reason to believe that the ATSE would be
interpreted in a different manner, let alone shown that "no set
of circumstances exists under which the [ATSE] would be valid."
*Robinson*, 367 F.3d at 290.  Their argument that the ATSE creates
an impermissible mandatory presumption is meritless as a matter
of law.  Furthermore, any argument that the ATSE creates an

impermissible permissive presumption is meritless given the posture of the case as a facial challenge, as permissive presumptions can be challenged only as applied to a particular defendant in light of the facts presented at trial. *See Franklin*, 471 U.S. at 314-45; *Allen*, 442 U.S. at 162-63.

### E.   Due Process - Interested Decisionmaker

Plaintiffs next argue that they have been denied due process because Redflex, the operator of the camera systems and the principal "witness" in the criminal prosecutions, has a financial stake in the outcome of the proceedings. *Cf. Ward v. Village of Monroeville*, 409 U.S. 57, 59-60 (1972); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). As the Fifth Circuit has held, however, the principle barring interested persons from making decisions applies only when the allegedly biased decisionmaker is sitting in a judicial capacity. *See Broussard v. Parish of Orleans*, 318 F.3d 644, 662 (2003). Because Redflex does not participate in the ATSE process in a judicial capacity, there is no due process violation. Plaintiffs' argument to the contrary is without legal merit.

## VI.   CONSTITUTIONAL CLAIMS - CIVIL

The Court now assumes that the ATSE is a civil ordinance and considers whether plaintiffs' claims have any merit under that

assumption.  Plaintiffs' only claim in the civil context is that

the ATSE deprives them of property without due process of law.

*See* Mem. in Opp. to Parish's Motion for Summary Judgment, R. Doc.

94 at 4-5.  To evaluate this claim, the Court must apply the

balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319

(1976), which provides the basic framework for assessing the

constitutional adequacy of state procedures.[3]  *See Parham v.*

*J.R.*, 442 U.S. 584, 599 (1979) (describing the *Mathews* test as "a

general approach for testing challenged state procedures under a

due process claim").  Under that approach, the Court must weigh

three factors:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous

---

[3] There are three principal contexts in which the *Mathews*
test is inapplicable, two of which are not implicated in the
context discussed here.  *See Weiss v. United States*, 510 U.S.
163, 177 (1994) (military proceedings); *Medina*, 505 U.S. at 443
(state criminal prosecutions).

The constitutional adequacy of notice is also evaluated
under a separate standard.  *See Dusenbery v. United States*, 534
U.S. 161, 168 (2002).  To the extent that the sufficiency of the
ATSE notice provisions might be in question, there can be no
doubt that the ordinance provides notice "reasonably calculated,
under all the circumstances, to apprise interested parties of the
pendency of the action and afford them an opportunity to present
their objections."  *Dusenbery*, 534 U.S. at 168 (quoting *Mullane
v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).
Courts of appeals have approved notice provisions that are
materially identical to those in the ATSE on numerous occasions.
*Compare* Jefferson Parish Code of Ordinances § 36-311(b) (describing
content of notices mailed to the vehicle owners), *with Rector*,
348 F.3d at 948 (approving similar notice in the context of
parking tickets), *Herrada v. City of Detroit*, 275 F.3d 553, 557
(6th Cir. 2001) (same); *Horn v. City of Chicago*, 860 F.2d 700,
701 (7th Cir. 1988) (same).

> deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335

Here, the defendants have shown that the procedures established by the ATSE are more than sufficient to satisfy the requirements of due process. First, the private interest at stake is extremely small. The ATSE establishes a maximum penalty of $175 plus court costs. *See* Jefferson Parish Code of Ordinances § 36-309. In addition, the ordinance provides that "[n]o fine imposed ... will result in notification to the Louisiana Department of Motor Vehicles, to the vehicle owner's insurance company or to the insurance company of any person on whom a fine is imposed under this article." *Id.* § 36-313. The imposition of a small fine with no collateral consequences is an unquestionably minor deprivation. *Compare Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)(indefinite detention without charges); *Washington v. Harper*, 494 U.S. 210 (1990) (nonconsensual administration of antipsychotropic drugs); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (termination of welfare benefits).

Second, the risk of an erroneous deprivation is minimal under the current procedures, and the likely value of additional procedures is low. Unlike proceedings that turn on complex factual determinations, *see, e.g.*, *Mathews*, 424 U.S. at 343-44

(termination of disability benefits); *Goldberg*, 397 U.S. at 269 (termination of welfare benefits), ATSE enforcement proceedings will usually involve the fact finder's evaluation of a single photograph depicting the position of the defendant's vehicle. *See* JEFFERSON PARISH CODE OF ORDINANCES § 36-312. The straightforward nature of this inquiry makes it unlikely that errors of fact will be made.

Moreover, ATSE defendants are subject to the same court process as litigants in ordinary judicial proceedings. They are given an opportunity to be heard before a disinterested decisionmaker in a judicial proceeding governed by the generally applicable rules of procedure. *See* LA. REV. STAT. §§ 13:2561.5, 2562.5, 2562.25 (setting out the necessary qualifications for parish court judges and traffic hearing officers); *id.* §§ 13:2561.10, 2562.10 (providing that civil proceedings in the parish courts for Jefferson Parish are governed by the Louisiana Rules of Civil Procedure); LA. CODE CRIM. PROC. art. 15 (providing that criminal prosecutions in the parish courts are generally governed by the Louisiana Code of Criminal Procedure); JEFFERSON PARISH CODE OF ORDINANCES § 36-309 (providing that ATSE violations must be "handled in a manner consistent with that of a parking violation"); Broussard Aff., R. Doc. 132 (describing the manner in which parking violations are enforced). These procedures are far more protective of citizens' rights than the sorts of

procedures that have been approved on numerous occasions in this circuit.  *See, e.g., McIntosh v. Partridge*, 540 F.3d 315, 324-25 (5th Cir. 2008) (summary suspension of state-employed dentist); *Broussard*, 318 F.3d 644, 655-57 (5th Cir. 2003) (assessment of bail fees without a hearing); *Than v. Univ. of Tex. Medical School at Houston*, 188 F.3d 633, 634-35 (5th Cir. 1999) (expulsion of student after hearing before professor).

Finally, as to Jefferson Parish's interest, it cannot be denied that state and local governments have a significant interest in "preserving the safety of [their] public highways." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979).  Indeed, the Supreme Court has described this interest as "paramount."  *Id.; see also Dixon v. Love*, 431 U.S. 105, 114 (1977) (discussing "the important public interest in safety on the roads and highways"). In addition, the text of the ATSE indicates that the statute was passed in furtherance of the Parish's interest in increasing the efficiency of traffic flow and preserving financial resources. All of these are important government interests.

As the foregoing discussion indicates, the ATSE hearing procedures provide significantly more process than is constitutionally due.  The plaintiffs have not argued otherwise. Rather, they argue that the *Mathews* test applies only to administrative proceedings, not to judicial proceedings like those contemplated by the ATSE.  This assertion is incorrect.

The Supreme Court has used the *Mathews* test to evaluate state judicial procedures on numerous occasions. *See, e.g.*, *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (adequacy of prejudgment attachment procedure used in state court proceedings); *Santosky v. Kramer*, 455 U.S. 745, 758 (1982) (standard of proof applicable in state court proceeding to terminate parental rights); *Lassiter v. Department of Social Services*, 452 U.S. 18, 27 (1981) (right to counsel in state court proceeding to terminate parental rights); *Addington v. Texas*, 441 U.S. 418, 425 (1979) (standard of proof applicable in state court proceeding to involuntarily commit an individual to a mental hospital). There is no suggestion in these cases or elsewhere that *Mathews* is limited to administrative proceedings.

In any case, plaintiffs' due process argument fails on its own terms. Plaintiffs argue that the defendants have denied them due process by failing to comply with a number of state law provisions, including the service of process provisions of the Louisiana Code of Civil Procedure and the subject matter jurisdiction provisions of the Louisiana Revised Statutes. *See* Mem. in Opp. to Parish's Motion for Summary Judgment, R. Doc. 94 at 6-16. Whether or not these state law arguments have merit as an independent matter, they do not demonstrate that the defendants have violated the Due Process Clause. As the defendants correctly point out, "a violation of state law is

neither a necessary nor a sufficient condition for a finding of a due process violation." *McIntosh*, 540 F.3d at 324 (quoting *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1059 (5th Cir. 1985) (en banc)). "The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with the [federal] constitutional minima." *Id.* (quoting *Gerhart v. Hayes*, 201 F.3d 646, 650 (5th Cir. 2000)).

Here, the plaintiffs have made no federal law-based argument that enforcement of the ATSE violates the Due Process Clause. Because the plaintiffs' only argument rests on the faulty premise that a state actor's violation of a state statute constitutes a due process violation, and because the defendants have satisfactorily demonstrated that the ATSE provides constitutionally sufficient procedures, the Court must conclude that the plaintiffs' claims are meritless as a matter of law.

## VII. CONCLUSION

As the foregoing discussion makes clear, the plaintiffs have failed to rebut the defendants' showing that there is no genuine issue of material fact as to whether the ATSE is unconstitutional on its face. This conclusion holds true irrespective of whether

the ATSE is classified as criminal or civil.

Accordingly,

The defendants' motions for summary judgment are GRANTED and plaintiffs' claims are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this 14th day of May, 2009.

_Sarah Vance_
Sarah S. Vance
United States District Judge